IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEANGELO BROTHERS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-0919-CV-W-NKL |
| ) | |
| DONALD HORNE and LARRY JENSEN, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

ORDER

Plaintiff DeAngelo Brothers, Inc., ("DeAngelo Brothers") brought the instant case seeking indemnification and other tort damages from Defendants Donald Horne ("Horne") and Larry Jensen ("Jensen") for the liability and legal fees incurred in *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, Civ. No. 02-0853 (W.D. Mo. 2005) (the "Contribution Litigation") and related proceedings. During the pendency of DeAngelo Brothers' Motion for Summary Judgment [Doc. # 30], however, Defendant Horne passed away[1] and the Eighth Circuit reversed the finding of liability against DeAngelo Brothers in the Contribution Litigation. *K.C. 1986 L.P. v. Reade Mfg.*, 472 F.3d 1009, 1026 (8th Cir. 2007). The Court delayed ruling on DeAngelo Brothers' motion as to Horne until his

---

[1]Although his estate is now defending the case, the Court continues to refer to Horne as the Defendant throughout this Order to avoid confusion.

1

estate had time to respond, but it granted partial summary judgment against Jensen.[2] Now that Horne's estate has responded, the Court grants DeAngelo Brothers' motion as to Horne in part.

I.   **Factual Background**

In 1997, Neal A. DeAngelo and Paul DeAngelo ("the DeAngelos") purchased all the stock of Habco International, Inc. ("Habco International"), from Defendants Horne and Jensen through a Stock Purchase Agreement (the "Agreement"). While negotiating the terms of that Agreement, Neal DeAngelo learned of legal proceedings concerning alleged environmental contamination at a site located in Armour Road in Kansas City, Missouri (the "Armour Road Site"), which had at one time been owned by Horne or entities which he controlled. Concerned about possible exposure to damages and expenses related to the environmental contamination at the Armour Road Site, the DeAngelos bargained for an indemnification clause in the Agreement whereby Horne and Jensen agreed to indemnify the DeAngelos and their successors for any damages, expenses or liability for the environmental contamination. Section 10.2(a) of the Agreement reads as follows:

> Each of the Shareholders [Horne and Jensen], covenants and agrees at his sole cost and expense, to severally indemnify, defend, protect, save and hold harmless Buyer [Paul and Neal DeAngelo] and the Company [Habco International] from and against any and all claims, demands, lawsuits,

---

[2]Although DeAngelo Brothers has been relieved of its liability on the underlying claims by the Eighth Circuit, it still seeks to recover its attorneys' fees. The Court has already found Jensen jointly and severally liable to defend and indemnify DeAngelo Brothers on the Contribution Litigation. Jensen has since moved the Court to reconsider whether that liability is joint and several or just several. The Court has not yet ruled the motion to reconsider.

judgments, awards, penalties, fines, assessments and damages (including reasonable attorneys and other professional fees and disbursements and costs associated therewith, unless otherwise limited or prohibited by the other terms of this Agreement) ("Damages"), directly or indirectly related to actions or causes of action arising out of or resulting from: . . . Environmental Damages arising from the litigation styled: *K.C. 1986 Limited Partnership v. Reade Manufacturing, a Division of Reactive Metals & Alloys Corp., and U.S. Borax, Inc., Hardee's Food Systems, Inc., and Terracon Environmental, Inc. v. Habco, Inc., Donald E. Horne, Victor A. Horne, Jr., DEH Merrywood Co., and Habco Int'l..*, Case No. 93-1062-CV-W-5 in the United States District Court for the Western District of Missouri ("K.C. 1986 Limited Partnership Litigation") or any Joinder, or attempt to join or any separate claim, suit or action threatened or instituted against the indemnified parties with respect to the K.C. 1986 Limited Partnership Litigation or an assertion, or attempted assertion against any such indemnified person or successor liability for the damages asserted in the K.C. 1986 Limited Partnership Litigation or any Environmental Damages relating to the property which is the subject of such litigation.

Section 10.4(a)(i) further provides:

> If a claim for Damages or Environmental Damages (a "Claim") is to be made by a party entitled to indemnification hereunder or if any party entitled to be indemnified under this Article X (an "Indemnified Party") receives notice of the assertion by any third party of any claim or the commencement by any such third person of any Action together with any claim or action described in Section 10.2 above, including, but not limited to the K.C. 1986 Limited Partnership Litigation (any such claim or Action being referred to herein as "Indemnifiable Claim") with respect to which another party hereto (an "Indemnifying Party") is or may be obligated to provide indemnification, the Indemnified Party shall promptly notify the Indemnifying Party in writing ("Claim Notice") of the Indemnifiable Claim; provided, that the failure to provide such notice shall not relieve or otherwise affect the obligation of the Indemnifying Party to provide indemnification hereunder, except to the extent that Shareholders demonstrate actual prejudice caused by such failure.

These indemnification provisions were subject to a survival clause at Section 10.7(d) of

the Agreement which provides:

> Survival of Indemnification. The indemnification obligations of shareholders shall survive until fifteen (15) months after the Closing Date; provided, that the indemnification obligations made pursuant to (i) Section 4.12 [tax provisions] shall be governed by Section 10.5 hereof, (ii) Section 4.21 [labor and employment provisions] and the K.C. 1986 Limited Partnership Litigation shall survive the Closing until the expiration of the applicable statute of limitations related to the subject matter thereof.

During the discussions about the indemnification requirement and prior to the execution of the Agreement, the DeAngelos requested financial information concerning the value of Horne's assets to prove he could honor his indemnity obligations. After supplying the DeAngelos with a letter from his bank stating that his net worth exceeded $4,000,000, Horne allowed the DeAngelos' accountant to meet with his own accountant in Minnesota. The DeAngelos' relied on the figures shown to their accountant by Horne's accountant, though they did know that some of Horne's assets were held jointly with his wife. The Agreement was executed on March 19, 1997. The DeAngelos continued to operate Habco International under the same name until October 1998, when it was statutorily merged into DeAngelo Brothers, Inc., of which Neal A. DeAngelo was the CEO.

As the DeAngelos had feared, Habco International was named as a third party defendant in the K.C. 1986 Limited Partnership Litigation. The Court eventually dismissed that suit on December 9, 1998, pursuant to the stipulation of the parties. The case was refiled in 2002 in an action styled *K.C. 1986 Limited Partnership v. Reade Manufacturing,* Civ. No. 02-0853-CV-W-NKL (the "Contribution Litigation"). On June 5, 2002, DeAngelo Brothers received a General Notice Letter from the EPA concerning

the Site and the new lawsuit.  By letter dated July 1, 2002, DeAngelo Brothers' corporate counsel wrote to Briggs and Morgan attorney Avron Gordon, counsel for Horne and Jensen, to notify them "of an Indemnifiable Claim" as defined by the Stock Purchase Agreement and to demand that they "undertake, conduct and control, at [their] expense, the settlement on defense of the Indemnifiable Claim . . . ."[3]

On May 27, 2005, the United States Department of Justice commenced a separate recovery cost action in this Court concerning contamination at the Site against several of the parties in the K.C. 1986 Limited Partnership Litigation, including DeAngelo Brothers. Case No. 05-497 ("the Recovery Action").  DeAngelo Brothers again sent letters to Defendants giving written notice of that claim and demanding indemnity and a defense in the EPA Action in accordance with the obligations under the Agreement.  Neither Horne nor Jensen defended or indemnified DeAngelo Brothers with regard to any of these

---

[3]Horne argues, without offering any evidence, that this fact is not supported by admissible evidence but merely quoted from the Complaint.  However, Horne admitted the existence of the letter in his Answer by stating "The letter speaks for itself" in response to ¶ 28 of the Complaint which sets forth the quoted material.   Horne Answer ¶ 28.  *See* Fed. R. Civ. P. 8(d) ("Averments in a pleading . . . are admitted when not denied in the responsive pleading."). Although the letter itself was not attached to the Complaint, the fact that demand was made is supported by other documents in the record; *e.g.*, the August 15, 2002 letter to DeAngelo Brothers' attorney Steven Roth from  Briggs and Morgan attorney Thomas A. Larsen, which begins:
> "Dear Mr. Roth:
> "I am writing to respond to your letter of August 2, 2002 [sic] and to follow up on our telephone conversations.  In your letter you request that Larry Jensen and Donald Horne undertake the control and defense of the resolution of environmental issues regarding the site at 2251 Armour Road, North Kansas City, Missouri, as present in a June 5, 2002, letter from the Environmental Protection Agency, Region 5. . . ."

[Doc. # 39, Ex. B, p.10].  Finally, although he disputes the fact of the letter, Horne does not argue that DeAngelo Brothers failed to make a demand for defense in his Suggestions in Opposition to Summary Judgment.

5

claims. Although the Eighth Circuit's reversal has vacated DeAngelo Brothers' liability in the Contribution Litigation, it nonetheless incurred significant legal costs in defending that and the other two suits.

**II.     Discussion**

DeAngelo Brothers seeks summary judgment on all four counts against Horne including declaratory relief (Count I), breach of contract (Count II), equitable estoppel (Count III), and intentional misrepresentation (Count IV).

**A.     Counts I through III**

With regard to the first and third Counts of its Complaint, DeAngelo Brothers seeks a declaration that Horne has (and is estopped from denying) a present and continuing duty to defend and indemnify DeAngelo Brothers in the Contribution Litigation (Case No. 02-853), the Recovery Action (Case No. 05-497) and a Minnesota state court Declaratory Judgment Action (Case No. CT-04-015464, Fourth Judicial District Court of Minnesota) ("the Insurance Declaratory Judgment Action"). Count II seeks damages in contract for the breach of those duties.

As the Court has already explained in its February 21, 2007 Order [Doc. # 54] granting summary judgment in part against Jensen, any potential duty on the part of Horne to defend or indemnify DeAngelo Brothers under the Agreement was limited to fifteen months from the date the Agreement closed. The indemnification provisions of Section 10.2(a) covers the

> K.C. 1986 Limited Partnership v. Reade Manufacturing, a Division of
> Reactive Metals & Alloys Corp., and U.S. Borax, Inc., Hardee's Food

> Systems, Inc., and Terracon Environmental, Inc. v. Habco, Inc., Donald E. Horne, Victor A. Horne, Jr., DEH Merrywood Co., and Habco Int'l.., Case No. 93-1062-CV-W-5 in the United States District Court for the Western District of Missouri ('K.C. 1986 Limited Partnership Litigation') <u>or any Joinder, or attempt to join or any separate claim, suit or action threatened or instituted against the indemnified parties with respect to the K.C. 1986 Limited Partnership Litigation or an assertion, or attempted assertion against any such indemnified person or successor liability for the damages asserted in the K.C. 1986 Limited Partnership Litigation or any Environmental Damages relating to the property which is the subject of such litigation.</u> (Emphasis added).

However, the survival clause in Section 10.7(d) limits the duty to defend and indemnify to fifteen months for all claims except those relating to the tax provisions, the labor and employment provisions, or the K.C. 1986 Limited Partnership Litigation. Reading these two provisions together, it is clear that the phrase "K.C. 1986 Limited Partnership Litigation" refers only to Case No. 93-1062-CV-W-5 which was dismissed in 1998 and refiled in 2002 as Case No. 02-0853.

If, as DeAngelo Brothers contends, "K.C. 1986 Limited Partnership Litigation" also referred to all other cases arising out of the environmental contamination at the Armour Road Site, the qualifying language of Section 10.2(a) underlined above would be superfluous. Because the term "K.C. 1986 Limited Partnership Litigation" in Section 10.2(a) precedes the word "or" and then a list of additional claims related to the property that may also be indemnified, there is no logical basis for finding that the term "K.C. 1986 Limited Partnership Litigation" is a shorthand term for all those additional claims related to the K.C. 1986 property. *Mutual of Omaha Ins. Co. v. Bosses*, 428 Pa. 250 (Pa. 1968) (holding that an indemnity contract "must be construed in such a manner as to give

7

effect to all of its provisions [rather than] in such a way as to render any part of it useless and unnecessary").

Thus, the survival clause limits all those additional claims to fifteen months after the closing.[4] Since the Recovery Action and the Insurance Defense Declaratory Judgment Action did not arise until 2005, seven years after the closing, there could be no surviving duty to defend or indemnify DeAngelo Brothers with regard to those cases.

As for the Contribution Litigation, the Eighth Circuit has held that DeAngelo Brothers has no contribution liability, *see K.C. 1986 L.P. v. Reade Mfg*., 472 F.3d 1009, 1026 (8th Cir. 2007). Consequently, there is nothing for Horne to indemnify. However, under Pennsylvania law,[5] the duty to defend is broader than the duty to indemnify, *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 706 (Pa. 1997), and the damages for a breach of the duty to defend will ordinarily be the costs of defense. *Mace v. Atl. Ref. & Mktg. Corp*., 567 Pa. 71, 81 (Pa. 2001). Thus, even though DeAngelo Brothers was ultimately found not liable, Horne may still owe DeAngelo Brothers the cost of its defense if he breached his duty to defend them in the Contribution Litigation.

Horne argues that "K.C. 1986 Limited Partnership Litigation" as used in the indemnification provision refers only to Case No. 93-1062-CV-W-5, which was dismissed on December 9, 1998, and not Case No. 02-0853-CV-W-NKL (the

---

[4]The reference at the end of the survival clause to "the expiration of the applicable statute of limitations related to the subject matter thereof" refers to the tax and employment claims which also survive.

[5]Section 11.8 of the Agreement contains a choice of laws provision stating that Pennsylvania law governs any disputes between the parties.

8

Contribution Litigation), which was filed in 2002. Following the same logic the Court employed with regard to the Recovery Action and the Insurance Declaratory Judgment Action above, Horne argues that the Contribution Litigation was a "separate claim, suit, or action" within the meaning of the indemnification provision and therefore any duty to defend against it was barred by the fifteen month survival clause. Horne's argument is belied by the jurisdictional statement in ¶ 2 of the Complaint in the Contribution Litigation which states that "This Court has jurisdiction over this action pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), 42 U.S.C. § 6901, et seq., and 28 U.S.C. §§1331 and 1332, *the Court's Order of December 9, 1998 and the Stipulation and Agreement Regarding Dismissal adopted by the Court*." (Emphasis added). [Contribution Litigation Doc. # 1]. It is clear from the text of the Complaint that the Contribution Litigation was a continuation of the same "K.C. 1986 Limited Partnership Litigation" dismissed without prejudice by stipulation on December 9, 1998.

Horne also argues that DeAngelo Brothers has no standing to assert the indemnification rights of Neal and Paul DeAngleo because DeAngelo Brothers was not a party to the Agreement and has not adduced any evidence that Neal and Paul DeAngelo assigned any of their rights to it. Section 10.2(A) provides that

> [e]ach of the Shareholders [Horne and Jensen] covenants and agrees at his sole cost and expense, to severally indemnify, defend, protect, save an hold harmless Buyer [Neal and Paul DeAngelo] and the Company [Habco International] from and against any and all claims . . . (including reasonable attorneys and other professional fees . . . ).

9

Although the Eighth Circuit reversed this Court's previous ruling that Habco International was a successor to Habco, *K.C. 1986 L.P.*, 472 F.3d at 1026, the Court of Appeals' decision had no impact on the fact that DeAngelo Brothers is the successor of Habco International and assumed all of its rights and liabilities. Indeed, Horne admitted in his response to DeAngelo Brothers' summary judgment motion that Habco International was statutorily merged into DeAngelo Brothers in October 1998. Thus, DeAnglelo Brothers does have standing to assert the rights granted to Habco International under the Agreement.

DeAngelo Brothers demanded defense from Horne in the Contribution Litigation. In failing to provide that defense, Horne breached the Agreement and is liable to DeAngelo Brothers for the cost of its defense. However, the briefing and exhibits produced by DeAngelo Brothers address liability for attorneys fees and costs incurred in all three cases combined. Because the Court has concluded that Horne is liable only for the Contribution Litigation, Case No. 02-0853, the Court cannot grant summary judgment as to the amount of damages at this time.

### B.    Count IV

DeAngelo Brothers also seeks summary judgment on its intentional misrepresentation claim against Horne. Because DeAngelo Brothers carries the burden of persuasion at trial, it must demonstrate the nonexistence of any disputes of material fact as to every element of its claim. This it cannot do on the evidence currently before the Court.

10

First, it is not clear from the parties' briefs which state's law governs the misrepresentation claim. DeAngelo Brothers offers only Missouri case law. Horne argues that Missouri, Minnesota and Pennsylvania all have significant contacts with the alleged misrepresentation and each jurisdiction defines the tort differently.[6] Despite these differences, however, all three states require proof of a false statement. DeAngelo Brothers claims that the financial statements related to Horne's net worth and personal assets which he or his accountant produced during the negotiations were materially false. None of the financial statements shown to the accountant has been produced. The only documents in the record are a letter from Horne's bank stating that his net worth exceeded $4,000,000 at the time, a declaration by Neal DeAngelo stating that Horne's accountant showed DeAngelo's accountant a balance sheet suggesting that Horne had assets in excess of 8.6 million, and an asset summary of assets owned jointly by Horne and his

---

[6]*Compare Droz v. Trump*, 965 S.W.2d 436, 441 (Mo. App. 1998) ((1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) his right to rely thereon; and (9) the hearer's consequent and proximately caused injury) *with Florenzano v. Olson*, 387 N.W.2d 168, 174 n.4 (Minn. 1986) ((1) there must be a representation; (2) that representation must be false; (3) it must have to do with a past or present fact; (4) that fact must be material; (5) it must be susceptible of knowledge; (6) the representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing wither it is true or false; (7) the representer must intend to have the other person induced to act, or justified in acting upon it; (8) that person must be so induced to act or so justified in acting; (9) that person's actions must be in reliance upon that representation; (10) that person must suffer damage; (11) that damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury) *and Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) ((1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance).

11

wife in 1997. The balance sheet referred to in Neal DeAngelo's declaration is not in evidence and DeAngelo Brothers has offered no hearsay exception to admit the statement about what his accountant may have seen. But even assuming that both figures were supported in the record, DeAngelo Brothers has offered no evidence that either was false. Assets and net worth are not synonymous. It is entirely conceivable that someone could have $8,000,000 in assets but have a net worth of only $4,000,000 if he also had $4,000,000 in liabilities. At the very least, there is a dispute of material fact as to whether Horne made a misrepresentation to the DeAngelos while the Agreement was being negotiated. Summary Judgment must therefore be denied.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiff DeAngelo Brothers' Motion for Summary Judgment is GRANTED in part and DENIED in part. The Motion is GRANTED as to the liability of Defendant Horne to defend DeAngelo Brothers with regard to the *K.C. 1986 Ltd. P'ship v. Reade Mfg. Co.*, Civ. No. 02-0853 (W.D. Mo. 2005). The Motion is DENIED as to Horne's liability to defend or indemnify DeAngelo Brothers with regard to any other case and as to the misrepresentation claim in Count IV.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 29, 2007
Jefferson City, Missouri