IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEANGELO BROTHERS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-0919-CV-W-NKL |
| | ) |
| The Estate of DONALD HORNE and | ) |
| LARRY JENSEN, | ) |
| | ) |
| Defendants. | |

FINDINGS OF FACT, CONCLUSIONS OF LAW,
JUDGMENT AND ORDER

In this case, DeAngelo Brothers, Inc., seeks indemnification from Larry Jensen and the Estate of Donald Horne for the expenses DeAngelo Brothers incurred when it defended itself in *K.C. 1986 Ltd. P'ship v. Reade Mfg. Co.*, Civ. No. 02-0853 (W.D. Mo. 2005) ("K.C. 1986 Limited Partnership Litigation"), and related litigation. The Court previously ruled that Defendants are severally liable for DeAngelo Brothers attorneys' fees in the K.C. 1986 Limited Partnership Litigation.[1] The Court has also determined that Defendants have no surviving duty to defend or indemnify DeAngelo Brothers with regard to any other litigation related to the Armour Road Superfund Site, e.g., *United States v. Horne,* Case No. 05-497 ("the EPA Recovery Action") or the Minnesota state

---

[1] See Orders of February 21, 2007 [Doc. # 54], March 29, 2007 [Docs # 84] and April 16, 2007 [Doc. # 101].

1

court declaratory judgment action (Case No. CT-04-015464, Fourth Judicial District Court of Minnesota) ("the Insurance Declaratory Judgment Action").

On April 17, 2007, at a bench trial, DeAngelo Brothers presented testimony from its own counsel, Joe Whistler, and from its CEO, Neal DeAngelo. Defendants Jensen and Horne cross examined both witnesses. Deposition testimony of Mr. Ferguson, another of DeAngelo Brothers' attorneys, was also introduced as an exhibit. Following the bench trial, the Court invited the parties to submit post trial briefs on a few outstanding legal issues that must be resolved before a damage calculation could be made. Having reviewed those briefs, the exhibits, and the evidence from the trial, the Court makes the following Findings of Facts and Conclusions of Law.

**FINDINGS OF FACT**

1. Attorney Joe Whistler billed DeAngelo Brothers a combined total of $298,933.01 for all legal fees and costs associated with the various suits involving the Armour Road Superfund Site.

2. From this total, he deducted $22,577.50 for 83.1 hours of work attributable to the EPA recovery matter.

3. On cross examination, Whistler admitted he failed to segregate an additional 10.7 hours of work which were devoted at least in part to the EPA Recovery Action, amounting to an additional deduction of $2,942.50

4. Whistler also deducted $770 in fees for 2.8 hours of work on the Insurance Declaratory Judgment Action.

5. On cross examination, he admitted that he had failed to segregate an additional 9.5 hours of time relating at least in part to the Insurance Declaratory Judgment Action, amounting to an additional deduction of $2,612.50.

6. Whistler's total claimed fee included $41,003 for his work prosecuting this indemnification case.

7. Whistler's bills include three mediations he attended in an attempt to reach a global settlement of all the related lawsuits. He billed billed 7.5 hours for the first of these mediation on August 23-24, 2005; 12.7 hours for the second mediation on February 8-9, 2006; and 20.5 hours for the third mediation on March 13-14, 2006.

8. The mediations represent 40.7 hours of work or $11,192.50 in attorneys fees.

9. Although these 40.7 hours are included in Whistler's total fees, the mediations involved the EPA Recovery Action and the Insurance Declaratory Judgment Action, which are not indemnifiable under the Stock Purchase Agreement, as well as the K.C. 1986 Limited Partnership Litigation, which is. The latter two mediations also included an attempt to settle this indemnification action.

10. Attorney Joe Ferguson billed DeAngelo Brothers a total of $55,103.69 for all legal fees and costs associated with the various suits involving DeAngelo Brothers and Donald Horne.

11. From this amount, Ferguson annotated his bills to exclude $2,236.50 in fees from the Insurance Declaratory Judgment Action.

3

12. On cross examination, Ferguson admitted that he should have deducted an additional $515 for work on that case.

13. Ferguson also annotated and deducted $3,123 for worked billed on the EPA Recovery Action.

14. On cross examination, Ferguson admitted that he should have deducted an additional $264 for work on that case.

15. Ferguson also annotated and deducted $1,110 for work billed on a potential breach of fiduciary duty claim against the law firm of Briggs and Morgan on DeAngelo Brothers behalf which was related to money placed in escrow by Donald Horne.

16. Ferguson billed 1.5 hours for the August 2005 mediation, 1 hour for the February 2006 mediation, and 3.5 hours for the March 2006 mediation, for a total of 6 hours work or $1,320 in attorneys fees.

17. Although the six hours related to the mediations are included in his total fees, the mediations involved the EPA Recovery Action and the Insurance Declaratory Judgment Action, which are not indemnifiable under the Stock Purchase Agreement, as well as the K.C. 1986 Limited Partnership Litigation, which is.

18. DeAngelo Brothers also assumed liability for two of Habco's legal bills for the K.C. 1986 Limited Partnership Litigation, totaling $6,839.88.

19. Although Neal DeAngelo admitted that he received some tax benefit from deducting the cost of attorneys fees on his personal income taxes, no evidence was introduced as to the amount of the benefit.

4

20. Although efforts have been made by DeAngelo Brothers to recover insurance proceeds owed to Donald Horne as a result of the pollution at the Armour Road Site, no evidence was produced that any of those proceeds have been paid to DeAngelo Brothers.

21. The estate of Donald Horne has been substituted with the express permission of the estate's personal representative and it is the proper party in interest.

22. There is no dispute among the parties that the hours actually attributable to the K.C. 1986 Limited Partnership Litigation or the Indemnification action are reasonable.

23. There is no dispute among the parties that the hourly rates charged by Whistler ($275 per hour) and Ferguson ($180 - $220) are reasonable.

**CONCLUSIONS OF LAW**

1. The Court has subject matter jurisdiction to decide this case under 28 U.S.C. § 1332(a)(2) as complete diversity exists between the parties and the amount in controversy exceeds $75,000.

2. The Court has personal jurisdiction over the Defendants as neither has asserted otherwise.

3. Pennsylvania Law controls the award of attorneys' fees.

The choice of laws provision in Section 11.8 of the SPA provides, "This Agreement shall be governed by and construed in accordance with the internal laws (and not the law of conflict) of the State of Pennsylvania." Notwithstanding this unambiguous clause,[2] DeAngelo Brothers contends that Missouri law should control any award of

---

[2] All parties admitted at trial that the Stock Purchase Agreement was unambigious.

attorneys' fees, citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*. In a footnote to that opinion, the Supreme Court noted that "in an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." 421 U.S. 240, 260 n.31 (1975). The High Court's pronouncement has no bearing on contractual choice of laws clauses, however, except perhaps to say that the laws of the state chosen by the parties in such a clause should be followed by a court sitting in diversity. In any event, it is clear that the parties intended Pennsylvania law to control this dispute.

    4. Defendants owe DeAngelo Brothers their reasonable attorneys' fees in bringing this action to enforce the Defendants' duty to defend the K.C. 1986 Limited Partnership Litigation. These fees are in addition to the cost of defense incurred in defending the K.C. 1986 Limited Partnership Litigation itself.

"Under the American Rule, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 127 S.Ct. 1199, 1203 (2007) (internal quotations omitted). This default can be superseded by statute or by an enforceable contract allocating attorney's fees. *Id.* The parties to the instant suit opted out of the default American Rule in the Stock Purchase agreement. In Section 10.2, Defendants agreed to severally indemnify and defend DeAngelo Brothers against any and all claims "including reasonable attorneys fees" for

6

"the failure of any [Defendant] to perform or observe fully any covenant, agreement or provision to be performed or observed . . . . pursuant to this Agreement."

The Court has already determined that Defendants are severally liable to DeAngelo Brothers for failing to defend it in the K.C. 1986 Limited Partnership Litigation.  *See* Orders of February 21, 2007 [Doc. # 54], March 29, 2007 [Docs # 84] and April 16, 2007 [Doc. # 101].  Although the Court has concluded that any duty to defend the EPA Recovery Action or the Minnesota Declaratory Judgment Action did not survive the 15 month survival clause of SPA § 10.7(d), *see id.*, that clause exempts the K.C. 1986 Limited Partnership Litigation.  Since the present lawsuit is brought to vindicate Defendants' breach of their promise to defend DeAngelo Brothers in the K.C. 1986 litigation, it would make little sense to interpret the survival clause in such a way that the duty to defend survived but the enforcement mechanism for breaching that duty did not.  *See Kelmo Enterprises, Inc. v. Commercial Union Ins. Co.*, 285 Pa. Super. 13, 21 (1981) ("it would be anomalous to allow an insured attorneys' fees expended in defense of the underlying tort action but to deny the fees in an action brought to vindicate the contractual duty to defend"); *Mosaica Acad. Charter Sch. v. Commonwealth*, 572 Pa. 191, 209 n.18 (2002) ("in an action in assumpsit for the breach of a covenant to defend, recovery includes the costs of hiring counsel and other costs of defense") (citing *Kelmo.*)

5.  Defendants have failed to meet their burden to establish that any set-offs[3] are appropriate for either tax benefits or for insurance proceeds.

Section 10.7(a) of the SPA provides:

> [Defendants'] liability under the indemnification provisions of this Agreement shall be subject to a reduction in the computation of Damages and Environmental Damages in the amount equal to (i) any Tax benefit to be derived by [Plaintiff] by reason of, without limitation, any Tax deduction, basis adjustment, shifting of income, credits, deductions or otherwise from one or more fiscal periods, (ii) any insurance coverage or policy benefit that may be claimed by the party seeking indemnification . . .

During cross examination, Neal DeAngelo admitted that he probably received some tax benefit as a result of the sale, though he couldn't say how much. He also may receive some insurance proceeds, though that is the subject of other litigation which the Defendants are contesting.

Defendants bear the burden of proving the appropriateness and amount of any set-offs claimed. *See Shuemaker v. Nissley*, 225 Pa. 430, 433 (1909) ("If the defendant had any set-off or other defense the burden was on him to make it out by affirmative testimony."); *McKnight v. Newell*, 207 Pa. 562, 568 (1904) ("It is undoubtedly true that the burden of proof is upon a defendant alleging a set-off."). Moreover, "the party who pleads the existence of certain facts bears the burden of establishing those facts. As such, that party bears the risk that he will not persuade the trier of fact or that the trier of fact

---

[3] In its post trial brief, DeAngelo Brothers argues that set-offs are affirmative defenses which were not properly pleaded in the Defendants' answers. See Fed. R. Civ. P. 8(c). Although not pleaded originally, the Court finds that the issue of set-offs was tried, however cursorily, by the consent of the parties, and therefore shall be deemed to have been raised in the pleadings. See Fed. R. Civ. P. 15(b).

8

will not be persuaded to infer any facts from the facts proven to draw a conclusion of liability." *Commonwealth, Laurelton Center, Dep't of Public Welfare v. L & L Boiler Maintenance, Inc.*, 47 Pa. Commw. 14, 16 (1979).

Defendants counter that Pennsylvania law puts the burden on the party more likely to have probative information. *See Mahon v. Workers' Comp. Appeal Bd.*, 835 A.2d 420, 430 (Pa. Commw. Ct. 2003) ("when a particular party is more likely to have information that is probative of a particular issue, that party may bear the burden of coming forth with such evidence"). However, it is clear from the record that Defendants chose not to conduct any discovery on the DeAngelos' tax returns or their potential insurance recovery. Thus, the Defendants cannot argue that a burden normally placed on them should have been shifted to the party with better access to the information. Defendants have simply failed to meet their burden of proof on this issue.

6. Pennsylvania follows the "lodestar" method for determining fees. *Jones v. Muir*, 511 Pa. 535, 551 (Pa. 1986) ("the method of determining a fee for legal services provided on an hourly basis is to multiply the total number of hours expended by the reasonable hourly rate. The resulting figure is known as the 'lodestar' fee, and a court can increase or decrease the lodestar fee in light of the contingencies involved and the quality of the work performed."); *see also Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanatory Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973). The lodestar is presumed to yield a reasonable fee; however, the district court has considerable discretion to adjust the lodestar upward or downward for any reason put

9

forth by the opposing party. *Bell v. United Princeton Props.*, 884 F.2d 713, 721 (3d Cir. 1989). Although the lodestar method was developed in the context of statutory fee awards, it is also used to determine attorneys' fees under indemnity contracts. *Berg Chilling Sys. v. Hull Corp.*, 2005 U.S. Dist. LEXIS 414 at *6 (E.D. Pa. 2005); *see also Merola v. Atlantic Richfield Co.*, 493 F.2d 292, 298 (3d Cir. 1974) ("we hold that in enforcing an agreement to pay reasonable attorneys' fees, courts in this circuit should apply the *Lindy* standards to determine the amount of the award").

7. The hours billed by Whistler and Ferguson fall into one of three categories: a) hours worked on indemnifiable claims which have been segregated by the billing attorney from aggregate bills; b) aggregated hours worked on both indemnifiable and nonindemnifiable claims which could have been segregated but were not; and c) aggregated hours spent mediating indemnifiable and nonindemnifiable claims together in an effort to reach a global settlement.

8. The hours falling into the first category–those devoted to indemnifiable claims which the billing attorney has segregated out–are fully compensable. "The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As one Pennsylvania district court has explained,

> The prevailing party seeking attorney's fees is required to first set out the
> number of hours spent by each attorney and in what manner those hours

10

> were spent. While the application need not set forth with painstaking exactitude the precise number of minutes spent on a specific activity and the results of that work, it should give the court fairly definite information as to the hours devoted to various general activities . . . and the hours spent by various classes of attorneys. A fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.

*Advanced Medical, Inc. v. Arden Medical Systems, Inc.* 1990 WL 39261, *2 (E.D. Pa. 1990) (citing *Powlak*, 713 F.2d at 978).

Plaintiff's counsel have combed through their aggregate bills and segregated out most of the hours spent on the Insurance Declaratory Judgment Action and the EPA Recovery Action. Except for the hours devoted to other cases which Plaintiff's counsel did not segregate and the hours for which segregation was not possible, both discussed separately below, no challenge has been made by either defendant as to the reasonableness of hours devoted exclusively to the K.C. 1986 Limited Partnership Litigation or the instant indemnification case. The Court concludes that these hours are reasonable and multiplies such hours by the unchallenged rates of the respective attorneys. DeAngelo Brothers are awarded $258,838.01 in segregated hours for the services of Cooling & Herbers, and $46,535.19 in segregated hours for the services of Rosen, Jenkins, and Greenwald.

9. The hours in the second category are not compensable. These are the hours which could have been segregated between indemnifiable and nonindemnifiable claims but were not. At least one Pennsylvania state court has held that, where only one claim among many is recoverable and the attorney does not provide evidence of the amount of

11

time spent on that claim, no attorneys fees may be recovered. *See Thomas Jefferson University v. Wapner* 2006 WL 1141316, *3 (Pa.Com.Pl., 2006). This is in keeping with the general rule that "plaintiff as fee-petitioner bears the burden of persuasion . . . to show how many hours were reasonably devoted to the case . . . . It thus must present specific evidence of the hours incurred in order to provide sufficient information for the district court to evaluate the claimed hours." *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1216 (3d Cir. 1978).

Plaintiff's counsel have admitted that the unsegregated hours in the second category are at least partially devoted to claims for which no indemnification is warranted. For example, Whistler included all 1.3 hours billed on February 12, 2007 in his fee calculation. His notes for these hours detail the following matters: "Email to paralegal regarding request for notice in Minnesota probate court; responding email from paralegal; ECF notice of order setting April 2, 2007 trial docket in DBI v. Horne and Jensen; conference with C. Garrison counsel for Briggs and Morgan." Whistler admitted on cross examination that the conference with C. Garrison was not related to the K.C. 1986 Limited Partnership Litigation and that it should have been deducted from the 1.3 hours he billed for that day. (Tr. 51:6-24). In making this admission, however, Whistler did not inform the Court as to what portion of the 1.3 hours should have been deducted for the conference with C. Garrison. Nor has he offered any means by which the Court might determine what portion of the 1.3 hours was devoted to the K.C. 1986 Limited Partnership Litigation. Therefore, as to those unsegregated hours where part of an

12

aggregate time entry was directly attributable to the K.C. 1986 Limited Partnership Litigation and part was directly attributable to nonnindemnifiable claims but there is no evidentiary basis for identifying the amount of time spent on the K.C. 1986 Limited Partnership Litigation, DeAngelo Brothers has failed to meet its burden of proof and the entire time entry is excluded.

10. As to the third category, the Court concludes that DeAngelo Brothers is entitled to 80 percent of the hours billed. These are the hours spent mediating all claims in an effort to reach a global settlement. In *Northeast Women's Center v. McMonagle*, a case involving some causes of action for which statutory fees were provided and some for which they were not, the district court found "that the RICO claims and the pendent trespass and intentional interference with contract claims made up the 'bulk of the litigation'; that the trespass and RICO claims were proven by the same evidence; and that 'much of counsel's time was devoted to the development of the evidence and the litigation as a whole.'" 889 F.2d 466, 476 (3d Cir. 1989). Approving an award based largely on the successful RICO claim, the Third Circuit noted that "[i]n cases in which the plaintiff's successful and unsuccessful claims involve a common core of facts or related legal theories, or where much of counsel's time is dedicated to the litigation as a whole, it is often impossible to divide counsel's time on a precise claim-by-claim basis." *Id.* The Court went on to hold that

> [h]ere, after making substantial deductions in the hours claimed relating to non-RICO claims and determining that the interrelatedness of the plaintiff's claims made further deductions unwarranted, the court found that the remaining hours were reasonable in light of the nature and complexity of

13

> the plaintiff's RICO claim. Our review of the record provides no basis for setting aside the findings of the trial court.

*Id.* at 476-477.

Similarly, in *Payne v. Equicredit Corp. of Am.*, the district court was confronted with a situation in which the fee petitioner did not segregate time spent between his successful federal claims–for which there was a fee-shifting statute–and his unsuccessful state law claims. 2002 U.S. Dist. LEXIS 8919 (E.D. Pa. 2002), Under the circumstances, the court "focus[ed] on determining what amount is reasonable in relation to the results obtained, rather than excluding specific hours." *Id.* at *18-19. Finding that the plaintiff prevailed on his nondisclosure claim under Truth in Lending Act, which was his central claim, but not on his multiple state law claims based in tort, contract and fraud, the court reduced the lodestar value by 30 percent. *Id.*

The foregoing cases offer considerable insight in determining the lodestar for the time spent on global mediation. Such hours were aggregated in counsel's bills not because counsel forgot to segregate time spent on each case, but because segregation would have been impossible. By definition, an effort to arrive at a global settlement must involve discussions about multiple cases. Nevertheless, as with both of the cases cited above, one claim in the mediation predominated over all others: the K.C. 1986 Limited Partnership Litigation. The allocation order in that case apportioned responsibility for $1,164,597.62 of response costs incurred by Borax. See Allocation Order [Doc. # 399], Case No. 02-0853-CV-W-NKL. By contrast, the EPA Recovery Action apportioned responsibility for $247,047.20 in response costs incurred by the EPA. See Orders [Docs.

14

## 112, 144], Case No. 05-497. The latter, nonidemnifiable claim represents less than 20 percent of the liability at issue, while the K.C. 1986 Limited Partnership Litigation represents roughly 80 percent. The instant indemnification claim, which is also indemnifiable, was filed between the first and second of the mediations; thus, its import in the negotiations was likely minimal and offset by the Insurance Declaratory Judgment Actions, which are not indemnifiable. Thus, the Court concludes that awarding DeAngelo Brothers 80 percent of the hours spent in mediating all the cases is a reasonable amount. Accordingly, DeAngelo Brothers is awarded $8,954 (40.7 hours x .8 x $275) for the mediation services of Cooling & Herbers and $1,056 (6 hours x .8 x $220) for the mediation services of Rosen, Jenkins, and Greenwald.

11. DeAngelo Brothers is further entitled to indemnification for Habco's outstanding legal bills for the K.C. 1986 Limited Partnership Litigation at the time of the Stock Purchase Agreement, totaling $6,839.88.

12. Finally, DeAngelo Brothers submitted two documents at trial purporting to be interest calculations on the attorneys fees it paid to counsel in 2005 and 2006. The calculations include all attorneys fees paid during that two year period irrespective of whether the fees themselves are recoverable. The interest rate assumed in the calculations appears to come from the interest rate on DeAngelo Brothers' operating line of credit rather than any statute or provision in the Stock Purchase Agreement. Essentially, Plaintiff argues that it wouldn't have had to borrow as much money had the Defendants performed their duty to defend DeAngelo Brothers in the K.C. 1986 Limited Partnership

Litigation. Hence, the interest on the extra money borrowed should be awarded as additional damages.

DeAngelo Brothers has offered no legal authority to support an award of interest on attorneys fees, and the Court is aware of no precedent in Pennsylvania or elsewhere which would require Defendants to pay the interest on DeAngelo's own operating line of credit. DeAngelo Brothers has pointed to no statutory provision entitling it to interest. Nor has it cited any provision in the Stock Purchase agreement–the basis for the underlying fee award–which would support an award of interest. Moreover, even if there were some legal basis for awarding interest in this case, DeAngelo Brothers has not provided the Court with a calculation of interest based solely on the fees for which it is indemnified. In short, DeAngelo Brothers has failed to meet its burden of proof with regard to the propriety and amount of any interest award and is therefore awarded no interest.

**CONCLUSION**

Accordingly, it is hereby

ORDERED that Defendants Larry Jensen and the Estate of Donald Horne are severally liable to Plaintiff DeAngelo Brothers for attorneys' fees in the following amounts:

1. For the services of Cooling & Herbers, fees are AWARDED in the amount of $267,792.01;

2. For the services of Rosen, Jenkins, and Greenwald, fees are AWARDED in the amount of $47,591.19;

3. For unpaid legal bills of Habco assumed by DeAngelo Brothers upon closing of the Stock Purchase Agreement, fees are AWARDED in the Amount of $6,839.88.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: May 21, 2007
Jefferson City, Missouri